THE PEOPLE OF PUERTO RICO, Petitioner, *v.* DISTRICT
COURT OF MAYAGÜEZ, Respondent.

No. 297.   Argued April 30, 1935.—Decided May 10, 1935.

*José R. Gelpí, District Attorney,* and *Luis Janer, Assistant Prosecuting Attorney of the Supreme Court,* for petitioner.   *A. Ramírez Silva* and *Pedro Baigés Gómez* for intervener, the defendant in the criminal case which gave rise to the mandamus proceeding.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

On October 15, 1934, the Attorney General designated Luis C. Trigo, as Municipal Judge at Large, to act in place of the regular Judge of the Municipal Court of Mayagüez, in the trial of the cases of *People* v. *Arcadio Ramírez Cuerda* and *People* v. *Anselmo Vidal.* When the case against Arcadio Ramírez was heard on appeal, his attorneys moved for its dismissal on the ground that the Municipal Court of Mayagüez, as constituted on the day the complaint against Arcadio Ramírez was tried, had no jurisdiction over the person of the defendant. It was urged in support of said motion that only in cases of absence, death, or disqualification of the titular judge may the municipal judge at large be designated to take his place. According to the defense, the requirements of the law were not complied with in this case. It was further urged that the office of municipal judge at large has not been established by any law in Puerto Rico. The lower court ordered the dismissal of the case on the ground that the record did not show that there was a vacancy in the office of Municipal Judge of Mayagüez or that the regular judge was absent or disqualified to act. Feeling aggrieved by that order, the People of Puerto Rico, has filed in this

court a petition for a writ of mandamus to compel the Hon. Charles E. Foote, Judge of the District Court of Mayagüez, to assume jurisdiction in the appeal of the case of the *People* v. *Arcadio Ramírez Cuerda,* for assault and battery.

It is argued by counsel for Arcadio Ramírez that the record should show the reasons that the Attorney General had for appointing the municipal judge at large to substitute for the Municipal Judge of Mayagüez. In filing the demurrer for lack of jurisdiction in the district court, Mr. Ramírez Silva, attorney for Arcadio Ramírez, stated that the demurrer was filed in the municipal court at the commencement of the trial and before the defendant had made any plea as to his guilt or innocence.

In deciding the question the lower court expressed itself as follows:

"The Court, having heard the arguments of the parties, is of the opinion that even assuming that the General Appropriation Act of Puerto Rico of 1934 legally created the said office of Municipal Judge at Large in Puerto Rico, it does not appear that the regular Municipal Judge of Mayagüez, Cristino Colón, Esq., was disqualified to act as such in this case, and it has not been shown that there was a vacancy in said office, as is provided by the said General Appropriation Act in creating said office and providing the qualifications of the said officer and the cases in which the Hon. Attorney General may appoint him to act as such Municipal Judge at Large."

As may be seen, the lower court based its decision dismissing the case on the ground that it had not been shown that the regular Municipal Judge of Mayagüez was disqualified or absent, or that such office was vacant, and for this reason it did not deem it necessary to consider the question of the alleged inexistence of a law creating the office of municipal judge at large. We believe, however, that we should consider this question which has been properly raised by the defendant.

In Act No. 74 of 1934 (Session Laws, p. 516), which provides the appropriations to cover the ordinary expenses for

the support of the Government of Puerto Rico, there is an item reading as follows:

"Municipal judge at large, who shall be a lawyer and may be designated by the Attorney General to act in any case of disqualification, vacancy, and absence of a municipal judge, $2,308.50."

It is alleged that this provision is null and void because it was adopted in excess of the authority vested in the Legislature to create offices, in accordance with the eighth paragraph of section 34 of our Organic Act which reads as follows:

"No bill except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

The fifteenth paragraph of the same section is cited in relation to this restrictive provision of our Organic Act. It reads as follows:

"The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject."

The legislation dealing with the creation of the office of Municipal Judge at Large, which is attacked by the defendant, does not seem to have a proper place in the General Appropriation Act. It is true that the eighth paragraph of section 34 of our Organic Act allows, by way of an exception, that appropriation acts may cover more than one subject, but it is clear that such subject must refer to appropriation items, and not to any legislation of a general character which should not be included in an appropriation act. The fifteenth paragraph removes all doubt on the point, since it provides that the appropriation bill shall embrace only appropriations for the ordinary expenses of the three departments of the Government, for the payment of interest on the public debt, and for public schools.

The Constitution of the State of Pennsylvania contains a restriction which is identical with that which has been included in our Organic Act. Commenting on the effect of this restriction on the authority of the Governor derived from his veto power, the Supreme Court of Pennsylvania in the case of *Commonwealth* v. *Barnett*, 48 Atl. 976, said:

". . . The legislature, in framing and passing a bill, had full control over every subject and every provision that it contained; and the governor, as a co-ordinate branch of the lawmaking power, was entitled to at least a negative of the same extent. But by joining a number of different subjects in one bill the governor was put under compulsion to accept some enactments that he could not approve, or to defeat the whole, including others that he thought desirable or even necessary. Such bills, popularly called 'omnibus bills', became a crying evil, not only from the confusion and distraction of the legislative mind by the jumbling together of incongruous subjects, but still more by the facility they afforded to corrupt combinations of minorities with different interests to force the passage of bills with provisions which could never succeed if they stood on their separate merits. So common was this practice that it got a popular name, universally understood, as 'logrolling.' A still more objectionable practice grew up, of putting what is known as a 'rider' (that is, a new and unrelated enactment or provision) on the appropriation bills, and thus coercing the executive to approve obnoxious legislation, or bring the wheels of the government to a stop for want of funds. These were some of the evils which the later changes in the constitution were intended to remedy. Omnibus bills were done away with by the amendment of 1864 that no bill shall contain more than one subject, which shall be clearly expressed in the title. But this amendment excepted appropriation bills, and as to them the evil still remained. The convenience, if not the necessity, of permitting a general appropriation bill containing items so diverse as to be fairly within the description of different subjects was patent. The present constitution meets this difficulty—First, by including all bills in the prohibition of containing more than one subject, except 'general appropriation bills' (article 3, sec. 3); secondly, by the provision that the general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the commonwealth, interest on the public debt, and for public schools; all other appropriations shall be made

by separate bills each embracing but one subject' (Id. sec. 15) ; and, thirdly, by the grant to the governor of 'power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items, and the part or parts of the bill approved shall be the law, and the item or items of appropriation disapproved shall be void, unless re-passed according to the rules and limitations prescribed for the passage of other bills over the executive veto.' "

The history of this legislation in Pennsylvania shows that, originally, in order to remedy the evil pointed out by the Supreme Court of that State, the constitution prohibited that a bill contain more than one subject and provided that this subject should be clearly stated in the title; but, as the general appropriation bills were excluded from this restrictive provision, the evil was believed to subsist as to said bills. For the purpose of correcting it, the constitution was subsequently amended to ratify the original prohibition which excepted the general appropriation act, but it provided that this act could only include the appropriations above referred to. The amendment provided expressly what might perhaps have been deduced implicitly from the very terms in which the original prohibition and the exception of the appropriation act were drafted.

In accordance with these provisions, which are similar to those in force in Puerto Rico, the only appropriations which have a place in the general appropriation act are those for the ordinary expenses of the departments of the government, for the payment of interest on the public debt, and for public schools. And it is natural that this be so, in order that the purpose of the general prohibition may not be defeated, and the results sought by it may be obtained. Without these limitations, the general appropriation act could be the door through which matters of general legislation might pass without the opportunity of being fully and openly discussed.

In the instant case, the provision which is attacked is not confined to fixing an appropriation to cover an ordinary expenditure of a department of the Government. It goes

much further, since it creates an important office such as that of Municipal Judge at Large, and provides, in addition, that he must be a lawyer, and that he may be designated by the Attorney General to act in cases of disqualification, vacancy, or absence of a municipal judge. This is legislation of a general character which may not be included in an appropriation bill. *Constitutional Defense League* v. *Waters*, 164 A. 613, 309 Pa. 545: *State ex rel Davies* v. *Smith*, 75 S.W. (24) 828.

Inasmuch as no law creating the office of Municipal Judge at Large existed at the time of the trial at which the defendant was convicted, the petition for a writ of mandamus must be denied.